PROB 12C
(Rev.2011)

# United States District Court
## for
## Middle District of Tennessee

### Superseding Petition for Summons for Offender Under Supervision
### [Supersedes Petition Filed as Docket Entry No. 98]

Name of Offender: Cordell Jrake McKinley          Case Number: 3:12-00117

Name of Sentencing Judicial Officer: Honorable Aleta A. Trauger, U.S. District Judge

Date of Original Sentence: August 23, 2013

Original Offense: 18 U.S.C. § 922(g)(1) Convicted Felon in Possession of a Firearm

Original Sentence: 36 months' custody and three years' supervised release

Type of Supervision: Supervised release          Date Supervision Commenced: May 23, 2016

Assistant U.S. Attorney: Clay Lee          Defense Attorney: Dumaka Shabazz

## PETITIONING THE COURT

\_\_\_\_\_     To issue a Summons.
\_\_\_\_\_     To issue a Warrant.
_X_     To Consider Additional Violations/Information.

**THE COURT ORDERS:**
☐ No Action
☐ The Consideration of Additional Violations/Information
☐ The Issuance of a Warrant:
    ☐ Sealed Pending Warrant Execution
      (cc: U.S. Probation and U.S. Marshal only)
☒ The Issuance of a Summons.
☐ Other

Considered this 13th day of March, 2017,
and made a part of the records in the above case.

_____
Aleta A. Trauger
U.S. District Judge

I declare under penalty of perjury that the
foregoing is true and correct.
Respectfully submitted,

_____
Wendi Potter
U.S. Probation Officer

Place          Nashville, TN

Date          March 7, 2017

## ALLEGED VIOLATIONS

The information provided in the previous petition, filed as docket entry No. **98**, has been amended as follows:

Violation No. 2 - has been amended to report non-compliance with drug testing and treatment.

The probation officer believes that the offender has violated the following condition(s) of supervision:

Violation No.    Nature of Noncompliance

**1.**    **The defendant shall refrain from any unlawful use of a controlled substance.**

To date, Mr. McKinley has tested positive for unlawful controlled substances six (6) times:

| | | |
|---|---|---|
| May 27, 2016 | July 8, 2016 | August 12, 2016 |
| June 23, 2016 | July 18, 2016 | August 25, 2016 |

Mr. McKinley tested positive for the use of opiates and benzodiazepines on May 27, 2016.When questioned, Mr. McKinley admitted to ingesting a Lortab pill that was not prescribed to him. He also reported being prescribed Xanax, but has yet to provide proof of a valid prescription.

On June 23, 2016, Mr. McKinley tested positive for the use of hydrocodone/hydromorphone and oxycodone/oxymorphone. When questioned, Mr. McKinley admitted to ingesting two 10 mg Percocet pills two days prior, for reported back pain. He admitted to having no prescription for Percocet.

On July 8, 2016, Mr. McKinley tested positive for the use of buprenorphine (Suboxone), hydromorphone, morphine, and oxymorphone. When questioned, Mr. McKinley admitted to ingesting a pill of Suboxone, for reported back pain. He admitted to having no prescription for Suboxone. He denied ingesting any opiates such as hydromorphone, morphine, or oxymorphone.

Mr. McKinley tested positive for the use of hydromorphone on July 18, 2016. When questioned, Mr. McKinley admitted to ingesting a two Lortab pills on July 16, 2016. He admitted to having no prescription for the controlled substance.

On August 12, 2016, Mr. McKinley admitted to ingesting Lortab and Percocet on August 10, 2016.

At the time of his drug test, on August 25, 2016, Mr. McKinley admitted to ingesting two opiate pills on August 24, 2016.

**2.**    **The defendant shall participate in a program of drug testing and substance abuse treatment which may include a 30-day inpatient treatment program followed by up to 90 days in a community corrections center at the direction of the Probation Officer.**

**To date, Mr. McKinley has failed to report to the probation office for random drug testing twenty (20) times:**

| July 9, 2016 | August 24, 2016 | **December 19, 2016** | **February 1, 2017** |
| July 16, 2016 | **October 14, 2016** | **December 27, 2016** | **February 13, 2017** |
| July 28, 2016 | **October 27, 2016** | **January 4, 2017** | **February 24, 2017** |
| August 9, 2016 | **November 3, 2016** | **January 20, 2017** | **February 28, 2017** |
| August 19, 2016 | **November 30, 2016** | **January 30, 2017** | **March 6, 2017** |

On June 23, 2016, the probation officer had a lengthy conversation with Mr. McKinley regarding pain management and referred him to two community providers for inpatient substance abuse treatment, Elam and Samaritan. Mr. McKinley did not follow up with either provider.

On July 27, 2016, Mr. McKinley completed a mental health and substance abuse assessment at Centerstone Mental Health. The treatment recommendation included a medication evaluation and monthly individual mental health counseling. Mr. McKinley was described by the provider as "drug seeking." During the medication evaluation on July 29, 2016, Mr. McKinley was required to provide urine for testing prior to prescribing medications. Mr. McKinley avoided the drug test and eventually walked out after disclosing that he does not want to participate in therapy without medication.

The probation officer contacted the offender via phone on August 11, 2016, to check on the status of his treatment. Mr. McKinley disclosed that he wanted treatment, but he admitted that he has taken no overt action to get the help he needs. The probation officer instructed Mr. McKinley to contact Samaritan and complete the telephonic intake interview.

On August 23, 2016, Mr. McKinley contacted the probation officer via phone and reported that he is addicted to opiates and gets sick if he does not ingest the pills. He reported that he was willing to go to the 7-day detox program offered by Elam.

The probation officer contacted Mr. McKinley on August 25, 2016, regarding his missed drug test and to ascertain the status of his treatment. He admitted that he forgot to call regarding the drug test on August 24, 2016, but that he was assessed by Elam on that day. He reported that there is no availability for the 7-day detox program at Elam. Attempts by the probation officer to confirm availability, numerous times, were unsuccessful. Mr. McKinley does not want to participate in the lengthier, 28-day, program because it may interfere with his tattoo removal process. The probation officer sternly explained that an opiate addition could result in organ failure or death. The tattoo removal process will be ongoing and can be rescheduled for another day.

**After being ordered to attend inpatient substance abuse treatment during a revocation hearing in August 2016, Mr. McKinley was successfully discharged from Buffalo Valley on October 3, 2016, and was immediately assigned to the random drug testing program. On October 18, 2016, the probation officer attempted to contact Mr. McKinley and his paramour to ensure he reported for the drug test he missed on October 14, 2016, to no avail. On October 19, 2016, he reported for drug testing and the results were negative.**

On October 27, 2016, Mr. McKinley missed a random drug test. The probation officer attempted to reach him at three different phone numbers and left messages on October 28, 2016, instructing him to report for drug testing. He did report later that day, and the results were negative.

Mr. McKinley missed a random drug test on November 3, 2016. The probation officer attempted to reach him and his paramour via phone on November 4, 2016, to no avail. The probation officer contacted Mr. McKinley's grandmother via phone the same day. She reported that she would relay the message to her grandson.

On November 30, 2016, Mr. McKinley missed a random drug test. He reported to the probation office the following day, and the results were negative.

Mr. McKinley missed a random drug test on December 19, 2016. The probation officer attempted to reach him via phone, to no avail. The probation officer left a voicemail instructing him to report the following day for drug testing. Mr. McKinley reported to the probation office on December 21, 2016, and the results were negative.

On December 27, 2016, Mr. McKinley missed a random drug test. He reported on December 29, 2016, and the results were negative.

Mr. McKinley missed a random drug test on January 4, 2017. The probation officer contacted him via phone and instructed him to report for drug testing the following day. He did not report to the probation office for drug testing until January 10, 2017, and the results were negative. Mr. McKinley left a voice mail for the probation officer on January 6, 2017, explaining that he was sick.

On January 20, 2017, Mr. McKinley was observed at the YMCA, just blocks from the probation office, texting on his cell phone, but he failed to report for drug testing. The probation officer attempted to reach him via phone the same day, to no avail. The probation officer contacted the paramour, Naquita Petway, and she indicated she would relay the message.

Mr. McKinley reported to the probation office on January 24, 2017, to make up the drug test he missed four days prior. He told the drug technician that he wanted to "get into a little trouble, so I can get violated and flatten out my sentence."

On January 30, 2017, Mr. McKinley missed a random drug test. The probation officer contacted him via phone on February 1, 2017, to instruct him to report immediately for drug testing and complete the monthly supervision reports that were missing. The probation officer inquired as to the statements he made to the drug technician days prior. He explained that he initially did not want to be on supervision, and he intentionally did not call for drug testing. Mr. McKinley expressed a renewed interest in supervision since he commenced outpatient treatment at Evelyn Frye Clinical Associates. Mr. McKinley did not report for drug testing on February 1, 2017.

The probation officer made contact with Mr. McKinley at his residence on February 6, 2017. He told the probation officer that he planned to report later that day for drug testing and to complete some overdue monthly supervision reports. Mr. McKinley did not report on February 6, 2017, as promised. On February 8, 2017, the probation officer attempted to reach him via phone, to no avail. The probation officer contacted Mr. McKinley's grandmother, and she reported that he was at the store.

**On February 13 and February 24, 2017, Mr. McKinley missed random drug tests. The probation officer attempted to reach him via phone, to no avail. The probation officer left him a voice mail instructing him to report by close of business on February 27, 2017, for a drug test. On February 28 2017, before the close of business, the probation officer attempted to reach Mr. McKinley via phone to remind him of the need for him to report for drug testing, to no avail.**

**Mr. McKinley missed a drug test on March 6, 2017. The probation officer attempted to reach him via phone the following day, to no avail. The probation officer left a voice mail instructing him to report immediately for drug testing.**

## Compliance with Supervision Conditions and Prior Interventions:

Cordell McKinley is unemployed and lives with his girlfriend and her children, in Nashville, Tennessee. Mr. McKinley began his three-year term of supervised release on May 23, 2016, and is due to terminate supervision on May 22, 2019.

Following his admission to ingesting the opiate-based controlled substance, Lortab, on May 27, 2016, the probation officer counseled him regarding the legality of his actions and referred Mr. McKinley for a mental health assessment, as ordered by the Court. Mr. McKinley was also warned of the negative impact it could have on his health. According to the presentence report, Mr. McKinley was previously diagnosed with Anxiety Disorder and was prescribed Xanax. He has a drug use history involving alcohol and ecstacy. He previously participated in a substance abuse assessment at Centerstone Mental Health in February 2012, during pretrial; no treatment was recommended at that time.

On June 10, 2016, a petition to modify the conditions of supervised release was submitted to the Court. On June 13, 2016, the Court ordered the modification to include the participation in drug testing and substance abuse treatment.

On June 23, 2016, after his admission to using a controlled substance, the probation officer counseled him regarding the potential need for pain management. Mr. McKinley reports extreme back pain, but no specific injury. The probation officer warned him about the dangers of continuing to unlawfully use a controlled substance without a prescription and provided him with two community substance abuse providers for possible inpatient treatment.

On July 1, 2016, Mr. McKinley reported that he completed the mental health and substance abuse assessment on Monday, June 27, 2016. The treatment provider's recommendations included individual sessions twice per month.

A report was submitted to the Court on July 5, 2016, notifying that Mr. McKinley tested positive for an unlawful controlled substance. The Court ordered no action necessary the same day.

On July 18, 2016, a report was submitted to the Court notifying that Mr. McKinley tested positive for four different unlawful controlled substances. The Court ordered no action necessary the same day.

On July 26, 2016, a petition for summons was submitted notifying that Mr. McKinley tested positive for controlled substances on four separate occasions from May to July 2016. The Court ordered the issuance of a summons on July 28, 2016. The initial appearance was held on August 12, 2016, before Magistrate Judge Bryant. The Court ordered Mr. McKinley to abide by the same conditions of supervision previously imposed.

The probation officer submitted a superseding petition on August 26, 2016, notifying of additional positive drug tests and noncompliance with drug testing and treatment. The Court ordered consideration of the additional violations the same day. The revocation hearing was scheduled for August 29, 2016.

Due to Mr. McKinley's continuous and unlawful use of opiates, noncompliance with drug testing, refusal to comply with outpatient treatment, and marginal efforts towards admitting himself to a detox facility or obtaining inpatient treatment, the Court ordered Mr. McKinley to enter and complete a 30-day inpatient drug treatment program on August 29, 2016. The Court also ordered a continuance and scheduled a hearing for November 7, 2016, to give Mr. McKinley time to complete inpatient treatment, obtain employment, and continue with random drug testing.

Mr. McKinley completed the telephonic prescreening process with Buffalo Valley, and he was admitted to their inpatient substance abuse program on September 6, 2016. Mr. McKinley successfully completed Buffalo Valley's inpatient treatment program on October 3, 2016. He contacted the probation office the following day and was immediately placed on the random drug testing program. The probation officer also referred Mr. McKinley for outpatient substance abuse treatment.

By October 14, 2016, Mr. McKinley began missing random drug tests. The probation officer orally announced the noncompliance with drug testing at a status conference held on November 7, 2016. Mr. McKinley told the Court that he was employed and provided proof of prescriptions. The Court held that another hearing would not be scheduled until another petition is filed.

In December 2016, the outpatient treatment provider, Evelyn Frye Clinical Associates, struggled to contact Mr. McKinley to commence outpatient services. On March 7, 2017, the probation officer contacted the therapist at Evelyn Frye Clinical Associates and confirmed that Mr. McKinley is consistent in his attendance and actively participates in group and individual outpatient substance abuse treatment.

Mr. McKinley has not reported for drug testing since January 24, 2017. He has not submitted a monthly supervision report since July 2016, and the probation officer has received no employment verification from Mr. McKinley.

**Update of Offender Characteristics:**
There is no additional information relevant to this section that has not already been provided in this petition.

**U.S. Probation Officer Recommendation:**
It is respectfully recommended that the Court consider the additional violations and information when Mr. McKinley appears for the revocation hearing. Assistant U.S. Attorney Clay Lee has been informed of this matter and he respectfully concurs.


Approved: _____
                Britton Shelton
                Supervisory U.S. Probation Officer

SENTENCING RECOMMENDATION
UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE
UNITED STATES V. CORDELL JRAKE McKINLEY, CASE NO. 3:12-00117

**GRADE OF VIOLATION:**     **C**
**CRIMINAL HISTORY:**     **III**

**ORIGINAL OFFENSE DATE:**     **POST APRIL 30, 2003**     **PROTECT ACT PROVISIONS**

|  | Statutory Provisions | Guideline Provisions | Recommended Sentence |
|---|---|---|---|
| CUSTODY: | **2 years (Class C Felony)** <br> *18 U.S.C. § 3583(e)(3)* | **5-11 months** <br> *U.S.S.G. § 7B1.4(a)* | **8 months** |
| SUPERVISED RELEASE: | **3 years less any term of imprisonment** <br> *18 U.S.C. § 3583(b)(2)* | **1-3 years** <br> *U.S.S.G. § 5D1.2(a)(2)* | **18 months** |

**Statutory Provisions:** 18 U.S.C. § 3583 (g)(3 and 4) If the defendant, refuses to comply with drug testing imposed as a condition of supervised release, or as a part of drug testing, tests positive for illegal controlled substances more than three times over the course of one year, the Court shall revoke the term of supervised release and require the defendant to serve a term of imprisonment not to exceed the maximum term of imprisonment authorized under subsection (e)(3).

Upon a finding, by the preponderance of the evidence, that the defendant violated a condition of supervised release, the Court may revoke the term of supervised release and require the defendant to serve in prison all or part of the term of supervised release authorized by statue for the offense that resulted in such term of supervised release, 18 U.S.C. § 3583(e)(3).

**Guideline Policy Statements:** Upon a finding of a Grade C violation, the Court may revoke probation or supervised release or extend the term of probation or supervised release and/or modify the conditions of supervision, U.S.S.G. § 7B1.3(a)(2).

Respectfully Submitted,

Wendi Potter
U.S. Probation Officer

Approved: _____
Britton Shelton
Supervisory U.S. Probation Officer

# VIOLATION WORKSHEET

1. **Defendant** Cordell Jrake McKinley

2. **Docket Number** *(Year-Sequence-Defendant No.)* 0650 3:12CR00117 - 1

3. **District/Office** Middle District of Tennessee/Nashville

4. **Original Sentence Date** __08__ / __23__ / __2013__
   <br>                                    *month*     *day*     *year*

5. **Original District/Office** _____
   <br>*(if different than above)*

6. **Original Docket Number** *(Year-Sequence-Defendant No.)* _____

7. **List each violation and determine the applicable grade (see §7B1.1):**

| Violation(s) | Grade |
|---|---|
| Unlawful use of controlled substances. | C |
| Failure to comply with drug testing. | C |
| | |
| | |
| | |
| | |
| | |
| | |

8. **Most Serious Grade of Violation** *(see §7B1.1(b))* — C

9. **Criminal History Category** *(see §7B1.4(a))* — III

10. **Range of Imprisonment** *(see §7B1.4(a))* — 5-11 months

11. **Sentencing Options for Grade B and C Violations Only** *(Check the appropriate box):*

☒ (a) If the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is at least one month but not more than six months, §7B1.3(c)(1) provides sentencing options to imprisonment.

☐ (b) If the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is more than six months but not more than ten months, §7B1.3(c)(2) provides sentencing options to imprisonment.

☐ (c) If the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is more than ten months, no sentencing options to imprisonment are available.

LF021
REV 05/01

12.       **Unsatisfied Conditions of Original Sentence**

List any restitution, fine, community confinement, home detention, or intermittent confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation (see §7B1.3(d)):

Restitution($) _____           Community Confinement _____

Fine($)       _____           Home Detention        _____

Other         _____           Intermittent Confinement _____

13.   **Supervised Release**

If probation is to be revoked, determine the length, if any, of the term of supervised release according to the provisions of §§5D1.1-1.3 (see §§7B1.3(g)(1)).

Term: _____ to _____ years

If supervised release is revoked and the term of imprisonment imposed is less than the maximum term of imprisonment imposable upon revocation, the defendant may, to the extent permitted by law, be ordered to recommence supervised release upon release from imprisonment (see 18 U.S.C. §3583(e) and §7B1.3(g)(2)).

Period of supervised release to be served following release from _____
imprisonment:

14.   **Departure**

List aggravating and mitigating factors that may warrant a sentence outside the applicable range of Imprisonment:

15.   **Official Detention Adjustment** (see §7B1.3(e)): _____ months _____ days